**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **CHARLES WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:11-CV-445 (MTT)** |
| ) | |
| **GEORGIA PUBLIC SAFETY TRAINING** ) | |
| **CENTER,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>ORDER</u>

Before the Court is the Defendant's motion for summary judgment.  (Doc. 17).

For the following reasons, the motion is **GRANTED in part and DENIED in part**.

### I.  FACTS

This is an employment discrimination case.  The Plaintiff, an African-American

male, filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e *et seq.*, and 42 U.S.C. § 1981.  He alleged the Defendant failed to promote him

because of his race and retaliated against him for his opposition to unlawful

discriminatory practices.

The Plaintiff began working for the Defendant as a craftsman in 1987.  (Doc. 17-

2, ¶ 1; Doc. 20-1, ¶ 1).  The Plaintiff was still a craftsman nearly 23 years later when, on

August 17, 2010, he applied for the position of maintenance manager.[1]  (Doc. 17-2, ¶

---

[1] That same day, the Plaintiff applied for a position that he referred to as "Lead Craftsman,
General Trades."  (Doc. 17-4, ¶ 5; Doc. 17-5).  According to the Defendant, there was no such
position as "Lead" Craftsman; the position was simply "Craftsman, General Trades."  (Doc. 17-4,
¶ 7; Doc. 17-6 at 2).  This was the same position and grade that the Plaintiff then held, so it
would not have been a promotion.  After this was explained to the Plaintiff, he did not participate

10; Doc. 20-1, ¶ 10).  The job announcement had been posted the day prior.  (Doc 17-4

at ¶ 12; Doc. 17-8 at 2-7).  The posting set forth the following "minimum requirements":

> At least 10 years of supervisory experience in a plant maintenance setting
> which included administrative and tasking assignments in building or
> facility design; facilities maintenance management; and/or
> commercial/industrial maintenance to include project management,
> procurement and troubleshooting.  Professional experience in budget
> planning and management required.  Must possess a valid Georgia
> Driver's License.

(Doc. 17-4, ¶ 13; Doc. 17-8 at 2).  According to Melanie Edmiston, the personnel officer

in the Defendant's Human Resources Department, the Plaintiff did not meet these

requirements because he did not have at least 10 years supervisory experience and

had no professional experience in budget planning and management.[2]  (Doc. 17-4, ¶

14).  Nevertheless, the Defendant accepted his application and invited him to participate

in the interview process.  (Doc. 17-4, ¶ 15).

On August 30, 2010 a three-member panel convened to interview the candidates

for the maintenance manager position.  The panelists were Butch Beach,[3] the

---

in interviews for the position and appears not to have pursued it further.  (Doc. 17-4, ¶¶ 7-10;
Doc. 17-7 at 2).  Meanwhile, the Plaintiff alleges the "Lead Craftsman" position was eliminated
after he applied for it because the Defendant "didn't want me to get it."  That is, he contends a
prior individual held the position of "Lead Craftsman," and that, when that person retired, the
Defendant downgraded the job title to "Craftsman."  (Doc. 17-29 at 27:18-22, 59:7-21).
However, as noted below, the Plaintiff concedes summary judgment for the Defendant is
appropriate on any claims related to this position, so the Court does not discuss it further.

[2] The Plaintiff disputes the application process generally as well as the fact that supervisory
experience was truly a minimum requirement.  But he does not specifically dispute the claim
that he did not possess the qualifications outlined in the published job posting.  (Doc. 20 at 7-8;
Doc. 20-1, ¶¶ 11, 14).

[3] Beach is a white male.  (Doc. 17-4, ¶ 17).

Defendant's deputy director; Eric Sellers,[4] warden of Burruss Correctional Training Center; and Paul McPipkin,[5] manager of the physical plant.  In addition to the Plaintiff, who was the only African-American applicant, the panel interviewed four white males for the job:  William Boswell, Samuel Hodges, Gary Horton, and Lewis Long.  (Doc. 17-4, ¶¶ 17-18; Doc. 17-9 at 2).  The five submitted to the same interview process and were asked scripted questions by the panel.  (Doc. 17-4, ¶ 19; Doc. 17-10 at 2-12).  The panelists then scored each applicant in seven skills categories on a scale of 1 to 5. (Doc. 17-11; Doc. 17-12).

At the end of the process, the panel recommended to the Defendant's director, Dale Mann, a white male, that he hire Horton for the position.  (Doc. 17-4, ¶ 22; Doc. 17-28 at 3; Doc. 20-1, ¶ 21).  Horton had the highest cumulative rating with a score of 98.  The Plaintiff was ranked lowest of the five with a score of 53.  The other candidates' scores ranged from 64.5 to 81.  (Doc. 17-4, ¶ 22; Doc. 17-14 at 2; Doc. 20-1, ¶¶ 22-24). The Plaintiff also had less supervisory experience than Horton.[6]  (Doc. 17-2, ¶ 20; Doc. 20-1, ¶ 20).  Mann accepted the panel's recommendation and offered the position to Horton, who accepted.  (Doc. 17-4, ¶ 24; Doc. 17-27 at 13:24-14:16; Doc. 17-28 at 1-2; Doc. 20-1, ¶ 28).

This was Horton's second time working for the Defendant.  Horton previously served as the Defendant's maintenance manager from 1987 until 1996, when he was

---

[4] Sellers is an African-American male.  (Doc. 17-4, ¶ 17).

[5] McPipkin is a white male.  (Doc. 17-4, ¶ 17).

[6] The exact nature of the Plaintiff's supervisory experience is unclear, but appears to be limited to supervising convicts who did maintenance work at the Defendant's facilities.  (Doc. 17-29 at 48:8-15).

fired for "inefficiency in performing assigned duties."  (Doc. 17-4, ¶ 21; Doc. 17-28 at 10;

Doc. 20-4 at 7).  During this prior stint with the Defendant, Horton was also disciplined

because he had not revealed on his application that he was a convicted felon.  Mann

knew about these issues before deciding to hire Horton in 2010.  But Mann said he

thought Horton's nondisclosure of his felony had been sufficiently addressed by past

punishment, and he saw no need to investigate the circumstances leading to Horton's

1996 termination.[7]  (Doc. 17-27 at 24:4-14, 31:1-25, 40:25-41:10; Doc. 17-28 at 5).

Despite the procedural formalities the Defendant used to fill the maintenance

manager position, the Plaintiff alleges the entire process was a "sham" because "[t]hey

had already decided" to hire Horton before even posting the job announcement.  (Doc.

17-29 at 38:14-19, 40:6-7; Doc. 20-1, ¶ 11).  Specifically, the Plaintiff alleges that a

meeting was held a month prior to the retirement of the previous maintenance manager,

Mory Walker.  In that meeting, Walker and interview panel members McPipkin and

Beach "had a discussion" about rehiring Horton.  The Plaintiff did not participate in this

meeting.  He says he found out about it because Walker sent a text message disclosing

the plans to a secretary, Cathy Thompson, who then showed the text to the Plaintiff and

several other employees because she wondered if they knew Horton.[8]  (Doc. 17-29 at

---

[7] The Defendant provides no further explanation for firing Horton in 1996.  The Plaintiff alleges Horton was fired for ongoing harassment of other employees.  (Doc. 17-29 at 44:23-45:21). Additionally, when the Plaintiff filed a grievance with the State following Horton's rehiring, the hearing officer found compelling the Plaintiff's and others' testimony that Horton's "menacing conduct" during his prior employment period would likely create a hostile work environment going forward.  Although the hearing officer recommended Horton be reassigned to a different position, Mann declined to accept that recommendation, which he was free to do.  (Doc. 17-27 at 53:20-54:7; Doc. 17-28 at 20-21).

[8] The Defendant has not objected to the Plaintiff's account of his conversation with the Defendant's employee or the content of the text message.

33:15-35:22).  In addition to questioning the legitimacy of the Defendant's hiring process, the Plaintiff also alleges Horton oversold his experience and was inherently unqualified for the job based on his history.[9]

The Plaintiff filed this lawsuit in November 2011.[10]  (Doc. 1).  In his Complaint, he alleged Title VII and § 1981 discrimination and retaliation claims based on the Defendant's failure to promote him not just to maintenance manager, but also to "Lead Craftsman" and, in July 2011, to housekeeping manager.  (Doc. 1).  However, in response to the Defendant's summary judgment motion, the Plaintiff disavowed his claims related to the "Lead Craftsman" and housekeeping manager positions.  He now expressly concedes that "summary judgment is appropriate with respect to [those] positions."  (Doc. 20 at 20 n.2).  The Plaintiff has also abandoned any retaliation claims related to the maintenance manager position, as he has not put forth any facts or argument on that issue.[11]

---

[9] Because the Court determines the Plaintiff has adduced sufficient evidence of pretext, the Court does not further discuss Horton's experience and qualifications.

[10] In June 2012, the Defendant fired the Plaintiff.  While the Plaintiff in his deposition alleges this was a retaliatory action prompted by his lawsuit, he does not consider the firing part of any of his claims currently before the Court.  (Doc. 17-29 at 7:2-10, 77:1-5).

[11] "In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him.  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and quotation marks removed).  Accordingly, as to any claims related to the "Lead Craftsman" or housekeeping manager positions, and any retaliation claim related to the maintenance manager position, summary judgment is **GRANTED** to the Defendant.

## II.  DISCUSSION

### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The movant must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing…relevant and admissible evidence beyond the pleadings."  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The non-moving party does not satisfy her burden "if the rebuttal evidence is merely colorable, or is not significantly probative of a disputed fact."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson*, 477 U.S. at 255.

### B. McDonnell-Douglas Framework

A Title VII plaintiff may prove his case directly or circumstantially. Here, there is no direct evidence of discrimination, so the Plaintiff must rely on circumstantial evidence. The framework for analyzing circumstantial evidence to establish a prima facie case of discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[12] Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons," but must produce evidence to raise a genuine factual dispute as to whether it discriminated against the plaintiff. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination. "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of

---

[12] The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff can always avoid summary judgment by creating a triable issue concerning the employer's discriminatory intent. A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Silverman v. Bd. Of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)). However, in this case the Plaintiff survives summary judgment under the *McDonnell-Douglas* standard.

credence.'" *Id.* at 1308 (quoting *Burdine*, 450 U.S. at 256).  Put another way, "a plaintiff

can survive a motion for summary judgment…simply by presenting evidence sufficient

to demonstrate a genuine issue of material fact as to the truth or falsity of the

employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Ga., Inc.,* 131

F.3d 957, 965 (11th Cir. 1997).  Consequently, at this juncture it is not required that a

plaintiff prove his employer was motivated by discriminatory intent.[13]

---

[13] There have been conflicting statements regarding pretext.  This may be due to the general confusion that has existed regarding a plaintiff's burden when faced with a summary judgment motion.  Citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993), some courts suggest that a plaintiff responding to an employer's motion for summary judgment must prove that the employer's legitimate, nondiscriminatory reason is false *and* that discrimination was the real reason for the employer's action.  *See Upshaw v. Ford Motor Co.,* 576 F.3d 576, 587 (6th Cir. 2009); *Maxfield v. Cintas Corp. No. 2,* 427 F.3d 544, 550-51 (8th Cir. 2005); *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).  However, the Supreme Court in *St. Mary's* did not address a plaintiff's burden at the summary judgment stage.  Rather, the Court addressed whether an employee is entitled to judgment as a matter of law when the factfinder has concluded that the employer's nondiscriminatory reason is false, but nevertheless found that the employer did not intentionally discriminate against the plaintiff.  Moreover, as noted by Judge Wilson in his concurring opinion in *Convoy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1236 (11th Cir. 2004), the Supreme Court in *St. Mary's* "flatly rejected the so-called 'pretext-plus' approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted reasons were pretextual, but also to introduce additional evidence of discrimination."  In *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000), the Supreme Court disposed of any lingering viability of pretext-plus analysis.  While it is true the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."  *Id.* at 147 (emphasis in original).  In a concurring opinion, Justice Ginsburg, in a summary of the majority's holding, wrote that a plaintiff "*may* survive judgment as a matter of law by submitting two categories of evidence:  first, evidence establishing a 'prima facie case,' …; and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false."  *Id.* at 154 (emphasis in original); *see also Dulin v. Bd. of Com'rs of Greenwood Leflore Hosp.*, 657 F.3d 251 (5th Cir. 2011).  Clearly, at the summary judgment stage, the plaintiff, in rebutting the employer's proffered legitimate, nondiscriminatory reason, does not shoulder the burden of producing evidence both of falsity and that the real reason was discrimination.  Indeed, the *McDonnell Douglas* test is all about proving intentional discrimination by circumstantial evidence; if the employee had direct evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to the *McDonnell Douglas* test.

**C.  Plaintiff's Failure to Promote Claim Pursuant to Title VII**

Pursuant to Title VII, it is unlawful for an employer to "fail or refuse to hire or to…discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  To prevail on a failure to promote claim under this statute, a plaintiff must establish a prima facie case of race discrimination by showing that: "(i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class."  *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).  A plaintiff's prima facie burden is not onerous.  *Id.* at 769; *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989).  He need only establish facts adequate to permit an inference of discrimination. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Here, the Plaintiff has made out a prima facie case of discrimination.  As an African American, he is a member of a protected class.  He applied for the maintenance manager position and was rejected in favor of Horton, a white male outside of the Plaintiff's protected class.  The Defendant contends the Plaintiff cannot satisfy the second and third elements of the prima facie case, however, because he was not qualified for the maintenance manager position.  Specifically, the Defendant argues that the Plaintiff was not minimally qualified because he did not possess at least 10 years of supervisory experience and had no professional experience in budget planning and management.  (Doc. 17-1 at 7).  These are two of the requirements that were listed in the job posting.  (Doc. 17-8 at 2).  But the Court is not convinced this rendered the

Plaintiff unqualified for the position because the qualifications listed in the job posting were not treated as *necessary* requirements.[14]  The Defendant accepted the Plaintiff's application and then decided to interview him for the job knowing what his basic qualifications were.[15]  Had the Plaintiff truly not been minimally qualified, his application would have been rejected outright, and there would be no reason for the Defendant to invite him to participate in the interview process.  Thus, the Court accepts the Plaintiff was qualified for the position of maintenance manager, particularly given that his "burden in proving a prima facie case is light."  *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 439 (11th Cir. 1996) (overruled on other grounds).

Regardless of the Plaintiff's establishment of a prima facie case of discrimination, the Defendant says it had a legitimate, nondiscriminatory reason for not promoting him to maintenance manager.  It claims not to have promoted the Plaintiff because it undertook a standardized hiring process that revealed Horton to be the highest scoring, most experienced candidate.  (Doc. 17-1 at 8-11).

The Plaintiff responds that this is false, and that he has thus met his burden of establishing pretext.  The Plaintiff contends the Defendant resolved to hire Horton even before announcing the vacancy in the maintenance manager position.  Specifically,

---

[14] Additionally, as discussed below, the Plaintiff produces evidence that Horton was preselected for the position.  While this is mostly relevant in the context of pretext, it also gives rise to an inference that the requirements in the job posting were narrowly tailored to fit Horton's background and experience as closely as possible so as to exclude other potential candidates. In that sense, the purportedly objective "minimum requirements" as stated in the job posting could not be true minimum requirements for the position.

[15] Additionally, in response to the Plaintiff's first interrogatories, the Defendant states Horton was hired over the Plaintiff based on disparities in their credentials and interview scores.  But the Defendant says nothing to suggest the Plaintiff was not minimally qualified for the job.  (Doc. 20-3 at 4-5).  Based on the Defendant's explanation, it simply viewed Horton as *more* qualified.

Walker, McPipkin, and Beach met and agreed in advance that Horton would get the job, and Walker then sent a text message to a secretary letting her know this was their decision.[16]   (Doc. 17-29 at 33:15-35:22).

The Defendant denies Horton was preselected.  But if the Court believes the Plaintiff's evidence, it undermines the Defendant's entire hiring process and therefore casts doubt on the Defendant's claim that it chose Horton based on the conclusions of the hiring panel.  Obviously, if members of the panel made a backroom decision to hire Horton, it would be surprising for him to *not* earn the highest score and be recommended as the top candidate.  Any "official" job posting and interviews that followed would be merely for show.  Thus, by advancing evidence that Horton was not hired for the reason the Defendant says he was hired, the Plaintiff has indirectly shown the Defendant's proffered explanation "is unworthy of credence."  *Kragor*, 702 F.3d at 1308.  That is, the Plaintiff has demonstrated "a genuine issue of material fact as to the truth or falsity" of the Defendant's assertion that it picked Horton based on some standardized evaluation.  *Evans*, 131 F.3d at 965.

The Defendant correctly notes that in the Eleventh Circuit, evidence of preselection does not *necessarily* indicate racial discrimination even where preselection violates corporate personnel policies.  *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007).  In *Springer*, four operations managers, including the African-American plaintiff, were eligible for promotion to a vacant senior operations manager position.  One day, the employer announced that one

---

[16] Certainly, the Plaintiff's argument would be strengthened if he presented the text message itself or testimony from the secretary, which he has not done.  But for the time being, his own sworn testimony is sufficient evidence to dispute the Defendant's claimed hiring process.

of the white operations managers had received the job, which the plaintiff alleged she had not known was available because it was never announced or posted internally.  *Id.* at 1346.  The hiring decision was made by the plaintiff's supervisor, who had direct knowledge of all four operations managers' qualifications.  *Id.* at 1349-50.  Because the supervisor had first-hand knowledge of the potential applicants and made a decision based on that knowledge, preselecting the white operations manager without posting the position was a reasonable business decision and was insufficient evidence of pretext.[17]  *Id.* at 1350.  Significantly, the employer's proffered legitimate, nondiscriminatory reason for not promoting the plaintiff was that the white operations manager was the more qualified candidate.  *Id.* at 1347-48.  This case is distinguishable from *Springer* for a couple of reasons, however.

As an initial matter, Mann, the Defendant's decision maker, did not have the same first-hand knowledge of the candidates as did the supervisor in *Springer*.  He knew who Horton and the Plaintiff were and he knew them well enough to say hello when he encountered them at work, but his job duties did not cause him to interact with either one on a regular basis.  (Doc. 17-27 at 10:21-11:12, 31:3-12).  He had no real grounds for deciding who the most qualified of the potential applicants was based on his own prior first-hand knowledge.  Moreover, if the decision to hire Horton was made

---

[17] The Eleventh Circuit also observed that the plaintiff had provided no additional evidence that the defendant's failure to post the position was based on racial animus or an intent to deny African-American operations managers the opportunity to apply for promotion.  *Springer*, 509 F.3d at 1350.  But that is not a persuasive factor in this case at this time.  To require the Plaintiff to provide evidence of the Defendant's discriminatory intent at this stage would revert to the "pretext-plus" approach at summary judgment that the United States Supreme Court has found outdated.  *See* note 13, *supra*; *Reeves*, 530 U.S. at 146-47.

before announcing the maintenance manager vacancy, neither Mann nor the panel members could have known who all of the potential applicants would be.

Second, and perhaps more importantly, the Defendant's legitimate, nondiscriminatory reason for not promoting the Plaintiff is that it did *not* preselect Horton but rather identified him as the best candidate through a standardized hiring process. This too is a departure from *Springer*, where the employer did not base its legitimate, nondiscriminatory reason on the claim that it undertook structured procedures to determine who to hire.  It just said the person hired was more qualified.  Here, the Defendant may have found Horton more qualified, but its stated reason for reaching this conclusion rests on the assertion that it engaged in a standardized evaluation process to determine the most qualified candidate.  The Plaintiff has specifically disputed the legitimacy of the process, and therefore has created a dispute as to the credibility of the Defendant's explanation.  Thus, while preselection does not *necessarily* establish pretext, when an employer's proffered legitimate, nondiscriminatory reason is that it did not engage in preselection but instead used a standardized hiring process, and the employee offers evidence that this is all a lie, a genuine dispute is created.[18]

Of course, the fact that the Plaintiff has created a dispute as to the existence of pretext by showing that the Defendant's proffered explanation is unworthy of credence does not mean he has produced any evidence of unlawful discrimination.  He simply is not required at the summary judgment stage to prove unlawful discrimination was the

---

[18] Oddly enough, if the Defendant conceded that some of its supervisors had conspired for Horton to get the job and that the interviews were all for show, then the Defendant might be in a better position to prevail at summary judgment.  Cronyism, after all, does not on its own violate Title VII, and the Defendant would then not find itself in a dispute as to whether it is lying about the legitimate, nondiscriminatory reason it provided for hiring Horton instead of the Plaintiff.

Defendant's true motivation.[19]  He need only show the existence of circumstantial evidence from which a reasonable juror might conclude a discriminatory motive exists, and he can do this by raising a genuine dispute as to the veracity of the Defendant's explanation for its action.  On the other hand, at trial the Plaintiff will have to demonstrate by a preponderance of the evidence that race was a motivating factor in the Defendant's decision to promote Horton over him.  Evidence the Defendant sets forth to show that racial animus was not its motive – such as the fact that three white candidates also were passed over for promotion – may prove persuasive at that point.  But the Defendant's true motivation is an issue for a jury, not this Court, to decide.

Accordingly, because the Plaintiff has demonstrated a genuine dispute as to the existence of pretext, the Defendant's motion for summary judgment must be **DENIED** on the Plaintiff's Title VII failure to promote claim.

### D.  Plaintiff's Failure to Promote Claim Pursuant to 42 U.S.C. § 1981

Section 1981 provides that all citizens shall have the same right to "make and enforce contracts."  However, the sole cause of action against state actors for violations of § 1981 is 42 U.S.C. § 1983.  *Butts v. County of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000).  Based on his Complaint, it is debatable whether the Plaintiff has pled a cause of action pursuant to § 1983.[20]  And to the extent that he has, the Defendant is immune from suit.  The Defendant is a state agency created and operating under the authority of state law and the Georgia Board of Public Safety.  O.C.G.A. § 35-5-1 *et seq.*  And the

---

[19] *See* note 13, *supra*.

[20] The Plaintiff's only mention of § 1983 is in the Complaint's paragraph on jurisdiction, where he alleges "the jurisdiction of this Court is also invoked pursuant to:…42 U.S.C. Section 1983." (Doc. 1, ¶ 3).  However, the Plaintiff does not set out any causes of action under § 1983 as he does for his claims under Title VII and § 1981.

Eleventh Amendment to the U.S. Constitution bars this Court from entertaining a suit against the state or one of its agencies or departments.  *Abusaid v. Hillsborough Cnty. Bd. Of Cnty. Com'rs*, 405 F.3d 1298, 1302-03 (11th Cir. 2005); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).  Moreover, the Defendant is not a "person" as set forth in § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Because the Defendant is immune from suit in federal court, its motion for summary judgment must be **GRANTED** on the Plaintiff's § 1981 failure to promote claim.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment (Doc. 17) on the Plaintiff's Title VII failure to promote claim related to the maintenance manager position is **DENIED**.  The Defendant's motion is **GRANTED** with respect to the Plaintiff's § 1981 claim.  The Plaintiff has abandoned his remaining claims, and as to those claims, the Defendant's motion is **GRANTED**.

**SO ORDERED**, this 22nd day of August, 2013.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT